UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| C-POD INMATES OF MIDDLESEX COUNTY ADULT CORRECTION CENTER, et al., | Civil Action No. 15-7920 (PGS) |
| Plaintiffs, | REPORT AND RECOMMENDATION |
| v. | |
| MIDDLESEX COUNTY, | |
| Defendant. | |

**BONGIOVANNI, Magistrate Judge**

This matter has been opened by the Court *sua sponte* based on Plaintiff Tyson Ratliff's ("Ratliff") failure to comply with this Court's Orders.  For the reasons that follow, it is respectfully recommended that Ratliff's claims be DISMISSED WITH PREJUDICE.

**Background and Procedural History**

On November 5, 2015, Plaintiffs, who were inmates housed at the Middlesex County Adult Correction Center in "C-Pod," a unit for solitary confinement, initiated this litigation by filing their Complaint against Middlesex County, challenging the social and environmental deprivations experienced by inmates in C-Pod, alleging that said deprivations violated their constitutional rights. (*See generally,* Pl. Cmplt.; Docket Entry No. 1).  Specifically, Plaintiffs brought claims for (1) unconstitutional punishment of pretrial detainees under the Fourteenth Amendment (Count I); (2) cruel and unusual punishment under the Eight Amendment (Count II); and (3) unconstitutional restrictions on the right of access to the courts under the Fourteenth Amendment. (*Id*).  A week after Plaintiffs filed their Complaint, they sought to certify a class. (Pl. Motion to Certify Class; Docket Entry No. 3).  This motion was ultimately withdrawn at Plaintiffs' request in order to give the American Civil Liberties Union ("ACLU"), which had decided to enter an appearance on

behalf of Plaintiffs, an opportunity to become acclimated with the case. (*See* Letter Order of 1/4/2016; Docket Entry No. 14).

Middlesex County responded to Plaintiffs' Complaint on December 17, 2015, denying that any constitutional violations had occurred. (*See generally*, Def. Answer; Docket Entry No. 11). After Defendant answered, the Court scheduled the Initial Conference in this matter. (Initial Scheduling Order of 1/5/2016; Docket Entry No. 15). During the Initial Conference, the Court set a schedule for certain discovery necessary to facilitate the parties' settlement discussions. (*See* Scheduling Order of 3/1/2016; Docket Entry No. 21). Said discovery ensued and the parties' settlement discussions progressed. (*See* Text Orders of 8/22/2016 & 10/6/2016; Docket Entry Nos. 25 & 26).

In light of the development of the parties' discussions, the Court scheduled an in-person status conference for January 30, 2017 for the purpose of discussing settlement. (Text Order of 12/6/2016; Docket Entry No. 27).[1] During the conference, it became apparent that the parties' negotiations had progressed significantly, with substantial headway having been made. As a result, the Court arranged to follow up with the parties via telephone on May 24, 2017.

On May 24, 2017, the Court stayed discovery in order to further facilitate the parties' settlement discussions. The Court also set a schedule for the parties' exchanges of settlement proposals. (*See* Letter Order of 5/25/2017; Docket Entry No. 29). The parties continued to exchange settlement proposals and it appeared that a settlement had been reached with 8 of 9 of the named Plaintiffs having signed the settlement agreement by June 19, 2018. The only Plaintiff who had not signed the settlement agreement was Ratliff, though during a conference held on June 19, 2018, counsel indicated that Ratliff was not unhappy with the agreement, but nevertheless did

---

[1] The conference was later moved to February 16, 2017. (Letter Order of 1/19/2017; Docket Entry No. 28).

2

not want to sign same. Given Ratliff's refusal to sign the settlement agreement, the Court scheduled a telephonic settlement conference exclusively for Ratliff and his attorney for July 10, 2018. (Text Minute Entry of 6/19/2018). As the Court explained:

> So I scheduled a telephone conference for July 10th to, again, discuss the settlement with Mr. Duddy and Mr. Ratliff separate from the defendants. It was my intention to explore with him what Mr. Ratliff's position was, if he had any concerns, if he wasn't interested in the settlement, all of the concerns that a Court would address when we're conducting an in-person settlement conference. . . . I thought I could at least tease-out and explore, again, with Mr. Ratliff informally what his concerns were, and perhaps address with Mr. Duddy any of the issues that he had, and maybe eliminate them, and move this along for a settlement.

(Tr. of Proceedings of 7/26/2017 at 4:7-22; Docket Entry No.41).

However, despite being aware of the scheduled telephonic settlement conference, Ratliff did not participate in same. As a result, on July 12, 2018, the Court entered a Letter Order to Show Cause in which Ratliff was ordered to appear in person before the undersigned on July 26, 2018 at 10:30 a.m. to show cause for his failure to participate in the scheduled July 10, 2018 conference. (Letter Order to Show Cause of 7/12/2018 at 1; Docket Entry No. 39). Ratliff was also directed to submit a written explanation regarding his failure to participate in the July 10, 2018 conference by July 24, 2018. (*Id*.at 2). Further, Ratliff was specifically warned that if he failed to comply with the Court's Order to Show Cause, his claims could be dismissed from this matter:

> **Should Plaintiff Ratliff fail to submit the written explanation or fail to appear in person on July 26, 2018 as ordered, both monetary and nonmonetary sanctions may be imposed, including the dismissal of his claims.**

(*Id*.) Despite the foregoing, Ratliff neither submitted a written explanation nor appeared in person at the show cause hearing.

3

During the show cause hearing, the Court confirmed through his counsel that Ratliff was aware of the Court's Order to Show Cause, the requirement that he submit a written explanation, the requirement that he appear in person, and the potential dispositive consequences failing to comply with the Court's Order could have for him:

> THE COURT:  I will now turn to, Mr. Duddy, and as I discussed off-the-record with you, I am not interested in encroaching upon your attorney-client communications.  What you have a responsibility to do, however, is to report to the Court, did you, in fact, provide this letter order to Mr. Ratliff, as I had instructed?  What's your understanding of whether or not he received this letter; was aware of today's appearance order to show cause hearing; whether he was aware of the July 24th submission date; and more importantly, if you have any indication of whether or not he intended to participate; and if he has any interest in proceeding with this litigation?
>
> That last aspect, I will note that there have been times where parties have somewhat compelled the Court to move forward while they are not interested in pursuing the litigation, they can't be bothered, mind you, of even withdrawing the complaint or officially indicating that they no longer want to participate, and then we have to go through these steps.
>
> So, if I could -- that was very longwinded, but, Mr. Duddy, if you outline the steps that you have taken to communicate this letter with Mr. Ratliff, its import, and if you have any indication of whether or not he intended to continue with this litigation.  You can remain seated, too.
>
> MR. DUDDY:  Thank you, Your Honor.
>
> On Monday -- on the morning of Monday, July 16th, I texted Mr. Ratliff a picture of the Court's order to show cause.  And that's been the way that I've been communicating with Mr. Ratliff for some time now, probably going on six months via text message, that is.
>
> So I took a picture of the order to show cause, I text it to him.
>
> Also in the body of my text message, I kind of pointed out or highlighted the substance of the order, which was that he was to provide either me or the Court with a written explanation by July

4

24th as to why he did not participate in the telephone conference on July 10th. And also, that he is to report in person to the Court with me today, July 26th. So, again, that was in the body of my text, in addition to sending him a picture of the order to show cause.

The text message went through to Mr. Ratliff from my end. I then followed up my text message with a phone call to him later that day. He took my phone call, and I then reiterated, again, the body of my text to him verbally and the substance of the Court order, very slowly and clearly, so as to make sure that he understood. And I finished the phone call by asking that he text me back to confirm receipt of my earlier text messages. And he simply just responded "okay" or "fine," something to that effect.

He did not text me back later that day, or the next day, despite my repeated text messages to him in those days asking for him to confirm receipt.

I then mailed -- I overnight via overnight mail a hard copy version of the order to show cause to his last known address in New York, New York. It's my understanding that that package is being returned, as of yesterday, because the occupant of his last known address is something other than him, and that person would not accept receipt of the package.

So a couple days after that, after my initial text message to him on July 16th -- and I apologize if I'm jumping around -- but I would say July 18th and 19th, I called him two separate times to remind him of the text messages, and to remind him or ask him to confirm receipt of those text messages.

Each time I placed that call to him, he took my call. But midway through my explanation to him as to what I was asking him to do, he hung up on me both times.

And so those were my efforts to ensure that he received the Court's order to show cause on July 12th.

I'm very confident that he did receive the order to show cause via text message. As I said, that has been our custom, that's been our way of corresponding with one another, and the message did go through on my side.

And then, of course, in my conversation with him on July 16th, I repeated the substance and import of the order to show cause.

5

> So I am confident that he did receive it, that he did understand the main aspects of it. And he's not here today, and so I'm also confident that he's not going to be showing up today before the Court.
>
> And similarly, it's my belief that he no longer wants to take part in this litigation, or prosecute this lawsuit of which he is a part.
>
> He did, I will add, finally, for the record, that about a week later -- a week after July 16th, thereabouts, and this would only be a couple days ago, he sent me a text message, seemingly out of the blue, more or less expressing his displeasure with the Middlesex County Jail. The text message neither answered the Court's order to show cause, nor did it confirm receipt of my delivery of the order to show cause. It was something of an irrelevant non sequitur about some issue entirely different.
>
> So, again, given all those circumstances, I do not believe that he wishes to prosecute this lawsuit.
>
> THE COURT: One question. When you mentioned that you believe he understood the import of the order to show cause, did that include -- is it your impression that Mr. Ratliff realized that he could be dismissed as a complainant in this matter if he did not come forward today?
>
> MR. DUDDY: It did include that, Your Honor, and I apologize for leaving that out of my summation here. When I spoke to him -- well, when I texted him the picture of the order to show cause, included in the body of my text was the information that if he did not comply with the order, he could be subject to sanctions/punishment, including his dismissal from the lawsuit, so that was in the body of my text. And I also repeated that to him in my phone conversation on the 16th. I repeated that to him slowly and clearly so as to make sure that he understood that.
>
> So to answer Your Honor's question, yes, I do believe that he understands that as a consequence of not following through with the order to show cause, he could be dismissed from the lawsuit.

(Tr. of Proceedings of 7/26/2017 at 6:1 – 10:13). After confirming the foregoing, the Court indicated its intention to enter a Report and Recommendation, recommending that Ratliff's claims

6

be dismissed for "failure to comply with this Court's orders and, equally as important, to prosecute his case." (*Id*. at 11:10-11).

## Analysis

The Federal Rules of Civil Procedure authorize courts to impose sanctions for failure to provide discovery, obey court orders and/or prosecute a case. *See* FED.R.CIV.P. 37(b)(2), 41(b). Where such failures have occurred, dismissal may be an appropriate penalty. *Id*. Generally, in determining whether to impose an involuntary order of dismissal with prejudice, the Court considers the factors set forth in *Poulis v. State Farm Casualty Co.*, 747 F.2d , 863, 868 (3d Cir. 1984). These factors include:

> (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the plaintiff's conduct; (3) the history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim.

*Id.* No single *Poulis* factor is determinative and dismissal may be appropriate even if some of the factors are not met. *See Mindek v. Rigatti,* 964 F.2d 1369, 1373 (3d Cir. 1992); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). If a court finds dismissal appropriate under *Poulis*, it may dismiss an action *sua sponte*, pursuant to its inherent powers and Federal Rule of Civil Procedure 41(b). *See Iseley v. Bitner,* 216 Fed App'x 252, 254-55 (3d Cir. 2007) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

The Court considers the *Poulis* factors in determining whether to recommend the dismissal of Ratliff's claims with prejudice. For the reasons that follow, the Court finds that under the circumstances presented here, the *Poulis* factors support the dismissal of Ratliff's claims with prejudice:

1. **Plaintiff's Personal Responsibility:** Ratliff is personally responsible for his failure to participate in the July 10, 2018 telephonic settlement conference, scheduled exclusively for his and his attorney's participation. He is also personally responsible for failing to appear on July 26, 2018 as ordered by the Court. As outlined in the Court's Letter Order to Show Cause of July 12, 2018 and on the record during the show cause hearing held on July 26, 2018, Ratliff was clearly aware of both conferences, the requirement that he participate in same and the consequences that could befall him if he failed to participate. Despite this knowledge, Ratliff elected to ignore the Court's Orders and not participate. This decision was solely his own and he bears full responsibility for same. As such, the Court finds this factor to favor dismissal of Ratliff's claims with prejudice.

2. **Prejudice to Defendant:** Middlesex County has been prejudiced by Ratliff's failure to prosecute this matter. As described above, the parties have been negotiating the settlement of this matter for many months. Just when it appeared that a full resolution had been reached, Ratliff decided to no longer participate in this case. While Ratliff certainly could not be compelled to agree to settle his claims, he was obliged to continue to participate in this matter. By failing to participate in the telephonic settlement conference or appear at the scheduled show cause hearing, Ratliff abandoned his duty to prosecute his claims. Ratliff's failure to participate in his own case leaves Middlesex County defending a matter against an absentee plaintiff who has made it clear that he is no longer interested in pursuing his own claims. This is unacceptable and prejudicial to Middlesex County. The Court finds that this prejudice, which was caused by Ratliff's failure to do that which was required of him, supports the dismissal of Ratliff's

claims with prejudice. *See, e.g., Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir. 1984).

3. **History of Dilatoriness:** Ratliff's failure to participate in the telephonic settlement conference scheduled exclusively for his benefit as well as his subsequent failure to appear, as ordered, at the July 26, 2018 show cause hearing establishes a recent history of dilatoriness on Ratliff's part. The Court finds that this factor supports the dismissal of Ratliff's claims with prejudice.

4. **Willfulness or Bad Faith:** While the circumstances surrounding Ratliff's failure to participate as ordered by the Court could support a finding of bad faith, even if they did not, they certainly establish that Ratliff's conduct has been willful. As a result, this factor further supports the dismissal of Ratliff's claims with prejudice.

5. **Effectiveness of Alternative Sanction:** As already explained in detail, Ratliff was directed to participate in a telephonic settlement conference. When he refused to do so, the Court entered a Letter Order to Show Cause, requiring him to both appear in person to show cause for his failure to participate in the settlement conference and to submit a written explanation regarding this failure. Ratliff was explicitly warned that failing to comply with the Letter Order to Show Cause could result in the dismissal of his claims. Despite being on notice that his claims could be dismissed if he did not comply with the Letter Order to Show Cause, Ratliff failed to appear at the show cause hearing and failed to submit the required written explanation. Under these circumstances, the Court finds that no lesser sanction than dismissal of his claims with prejudice would be effective. *See Joyce v. Continental Airlines, Inc.*, 09-2460 (WJM), 2011 WL 2610098, *2 (D.N.J. June 15, 2011).

6. **Meritoriousness of the Claims:** In light of the proceedings to date, the Court finds it likely that there is some merit to Ratliff's claims. As such, this particular factor militates against dismissing Ratliff' claims with prejudice.

When the Court considers all of the *Poulis* factors set forth above, the Court finds that on balance they clearly support the dismissal of Ratliff's claims with prejudice. Ratliff voluntarily filed this case. After doing so, he has failed to take the steps necessary to move this case forward. In fact, despite being given every opportunity to litigate his claims, Ratliff has elected to no longer participate in the case he initiated. As a result, this Court respectfully recommends that Ratliff's claims be dismissed with prejudice.

## Conclusion

The Court having given consideration to the *Poulis* factors;

IT IS on this 31st day of July, 2018,

RECOMMENDED that Ratliff's claims be DISMISSED WITH PREJUDICE; and it is

ORDERED that the Clerk of the Court activate this Report and Recommendation; and it is further

ORDERED that defense counsel send a copy of this Report & Recommendation to Ratliff via both text message to Ratliff's known cell phone number and via regular mail to Ratliff's last known mailing address immediately upon counsel's receipt of same; and it is further

ORDERED that pursuant to FED.R.CIV.P. 72(b)(2) any party, including Ratliff, who has an objection to the proposed findings and recommendations set forth herein has **14 days** after being served with a copy of this Report and Recommendation to file his specific written objections. For purposes of calculating the 14 days, Ratliff will be deemed served from the day defense counsel's

text message to Ratliff's cell phone is delivered.  Defense counsel is directed to inform the Court in writing once this text message has been sent.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
